IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHELLE LOUISE BRAWLEY, and PRESTON SMITH<br>      Plaintiffs,<br>vs.<br><br>THE STATE OF TEXAS, et al.<br>      Defendants. | )<br>)<br>)<br>)  No. 3:21-CV-2256-N (BH)<br>)<br>)<br>)<br>)  Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the plaintiffs' claims against the State of Texas should be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction, and their remaining claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

**I. BACKGROUND**

This civil rights lawsuit by Michelle Louise Brawley (Wife) and her husband, Preston Smith (Husband) (collectively Plaintiffs) arises from their encounter with Dallas Police Department (DPD) officers, which led to the arrest of one or both of them.

Plaintiffs allege that during Wife's appearance at the Frank Crowley Courts Building on August 23, 2021, unidentified district attorneys refused to "provide their Oath of Office on the Record" and conspired with a bailiff to racially profile Wife and to neglect her civil rights. (doc. 3 at 3.)[2] Wife was "charged with three false charges" and her bond was set at $5,000. (*See id.*) She and Husband went to EZ Out Bail Bonds (Bond Company) to obtain the bail money. (*See id.* at 4.) Husband was forced to leave the establishment "for passing out a few of his business cards all while

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for judicial screening.

[2] Citations to the record refer to the CM/ECF system number at the top of each page rather than the page numbers at the bottom of each filing.

waiting for his wife to walk out." (*See id.*) Both Wife and the Bond Company manager (Manager) called the police. (*See id.*)

One or both Plaintiffs were then arrested by several DPD officers (Officers), and Plaintiffs claim they "suffered injuries and damages due to the illegal arrest." (*Id.*) Officers allegedly conspired "with no oath" against Plaintiffs and deprived them "of their unalienable rights of marriage to pursue happiness and nationality." (*Id.* at 5.) By arresting him or his wife, they also allegedly interfered with Husband's right to travel. (doc. 17 at 5-7.) Plaintiffs claim that the alleged constitutional violations were the result of policies enacted or countenanced by the City of Dallas (City), including its failure to properly train its officers and to require that they take an oath of office. (*See* doc. 14 at 2; doc. 17 at 2.)

Plaintiffs seek monetary and injunctive relief against the State of Texas, City, Officers, Bond Company, its former owner (Owner), and Manager, under 42 U.S.C. § 1983, federal criminal statutes and regulations, the Universal Declaration of Human Rights, the Texas Penal Code, the Texas Hate Crimes Act, and general state tort law. (*See* doc. 3; doc. 14; doc. 17.)

## II. PRELIMINARY SCREENING

Because Plaintiffs are proceeding *in forma pauperis*, their complaint is subject to screening under 28 U.S.C. § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III. SECTION 1983

Plaintiffs sue under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.** **The State of Texas**

Plaintiffs sue the State of Texas for monetary damages based on alleged constitutional violations. (*See* doc. 3 at 5.)

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." Under the Eleventh Amendment, "[a]bsent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'" *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (quoting *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987)); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "This withdrawal of jurisdiction effectively confers an immunity from suit." *Id.* at 144. Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman*, 415 U.S. at 663. This immunity applies

3

to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Robertson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curium) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).

Further, although Congress has the power to abrogate immunity through the Eleventh Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecommns. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State of Texas has not waived its immunity here by consenting to suit, nor has Congress abrogated the Eleventh Amendment by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.* No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam).

The Eleventh Amendment bars Plaintiffs' § 1983 claims for monetary damages against the State of Texas, and those claims should be dismissed without prejudice for lack of subject matter jurisdiction. *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986).[3]

**B.  Claims Against Bond Company, Owner, and Manager**

Plaintiffs also sue Bond Company, Owner, and Manager. (doc. 3 at 4; doc. 14 at 2-3; doc. 17 at 3-4.)[4] Plaintiffs concede that these defendants are not state actors for purposes of § 1983. (*See* doc. 14 at 5; doc. 17 at 4.)

---

[3]  To the extent that Plaintiffs also sue the State of Texas under any other statute or law—whether state or federal—referenced in their pleadings, they have not identifed any waiver of sovereign immunity, so the Eleventh Amendment also bars these claims. *See Raj*, 714 F.3d at 328-29.

[4] Plaintiffs' responses to the magistrate judge questionnaires constitute amendments to their complaint. *See Macia v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

4

A private party may be acting "under color of state law" and be held liable under § 1983 in certain circumstances, however. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). In *Priester v. Lowndes Cty.*, 354 F.3d 414 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004), the Fifth Circuit explained that "[f]or a private citizen...to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Id.* at 420 (citing *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989) (per curiam)). A plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. *Id.*; *see also Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 676 (5th Cir. 2015) (per curiam). Allegations on this issue that are merely conclusory, without reference to specific facts, will not suffice. *Id.* (citing *Brinkman v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (per curiam)).

Here, Plaintiffs make no allegations that would support any finding of an agreement between Bond Company, Owner, or Manager and a state actor. Because they fail to plausibly allege that these defendants acted under color of state law, their § 1983 claims against them should be dismissed.

### C.  Officers

Plaintiffs appear to sue Officers for an "illegal arrest" and detention, failing to intervene, violating their oaths, and interfering with their right to travel and associate as a family. (*See* doc. 3 at 3-4; doc. 14 at 5-8; doc. 17 at 4-7.)

#### 1.  *False Arrest*

The Constitution "contemplates searches and seizures based 'upon probable cause.'" *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021) (quoting U.S. CONST. AMEND. IV). "The Fourth Amendment protects citizens from false arrests—that is, arrests unsupported by probable cause."

5

*Defrates v. Podany*, 789 F.App'x 427, 431 (5th Cir. 2019) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). Further, "[a] constitutional claim for false arrest, which [Plaintiffs] bring[] through the vehicle of § 1983, 'requires a showing of no probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro*, 568 F.3d at 204).

"The United States Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The facts must be known to the officer at the time of the arrest" and "must be particularized to the arrestee." *Club Retro*, 568 F.3d at 204 (citations omitted). A court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted).

Plaintiffs' allegations in support of their false arrest claim are vague and conclusory. They do not even state whether one or both of them were arrested, much less provide any facts to support an inference that Officers lacked probable cause to make an arrest.[5]

Second, their allegations are based on group pleading; they do not describe each officer's role, if any, in the arrest, so they have not sufficiently pleaded a § 1983 claim against any officer.

---

[5] Plaintiffs' pleadings bear some of the the hallmarks of the sovereign citizen ideology, with references to them as "sovereigns," their intent to proceed "sui generis,"and the Uniform Commercial Code. (*See*, *e.g.*, doc. 3 at 1, 3-5.) Courts have uniformly found this ideology—which individuals use to argue that governments are illegitimate and lack authority to regulate their behavior— to be frivolous. *See*, *e.g.*, *Berman v. Stephens*, No. 4:14-CV-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (collecting cases) ("His reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous. The same or similar arguments have been repeatedly rejected by other courts and are rejected by this Court."). To the extent that Plaintiffs here are relying on the sovereign citizen theory to argue that there was no authority to arrest one or both of them, their claims are frivolous.

*See*, *e.g.*, *Armstrong v. Ashley*, 60 F.4th 262, 274-75 (5th Cir. 2023) ("Armstrong's allegation also suffers from the distinct problem of group pleading: she simply faults the eight Law Enforcement Defendants as a group without factual material suggesting that any particular defendant suppressed evidence. Armstrong's allegation is independently insufficient for that reason since a § 1983 plaintiff 'must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'")(citing *Iqbal*, 556 U.S. at 676); (*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004)) ("[W]e do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the [illegal conduct] is specifically pled.").

### 2. *Conspiracy*

Plaintiffs also allege that Officers conspired to violate their "unalienable rights of marriage to pursue happiness and nationality while acting under color of law." (*See* doc. 3 at 5.)

To establish a conspiracy claim under § 1983, a plaintiff must show that there was an agreement among the alleged co-conspirators to deprive her of constitutional rights and that a deprivation actually occurred. *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Estate of Farrar v. Cain*, 941 F.2d 1311, 1313 (5th Cir. 1991). Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983. *See Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir. 1982).

Here, Plaintiffs do not allege "specific, nonconclusory facts that establish that there was an agreement among the defendants to violate their federal civl rights," so the conspiracy claims should be dismissed for failure to state a claim upon which relief can be granted. *Montgomery v. Walton*,

759 F.App'x 312, 314 (5th Cir. 2019) (per curiam) (citing *Priester*, 354 F.3d at 420).

### 3. Oath of Office

Plaintiffs also claim that Officers violated their oaths of office or never took them. (doc. 14 at 5-8; doc. 17 at 4-7.) These conclusory and vague allegations fail to state a claim. Plaintiffs do not allege any facts showing how Officers supposedly violated their oath. *See*, *e.g.*, *Granger v. Wilson*, Civil Action No. 5:20-cv-00297-TES, 2020 WL 5223305, at *7 (M.D. Ga. Sept. 1, 2020) ("Granger claims that Jarrard has taken an oath, but Granger fails to include any supporting factual allegations to support the conclusory assertion that Jarrard has 'violated his oath.'") (citation omitted). Additionally, "claims based on an alleged failure to take the oaths of office required by Texas state law do not raise a federal constitutional claim." *Bresler v. Dretke*, No. 3:04-CV-2046-B, 2006 WL 1867836, at *2 (N.D. Tex. July 6, 2006) (citing *Dean v. Dretke*, No. 03-10775, slip op. at 2 (5th Cir. Feb. 2, 2004) (unpublished opinion)). Any claims based on the allegedly invalid oaths of office or the failure to take oaths of office should be dismissed.

### 4. Failure to Intervene

Wife claims that Officers collectively failed to intervene. (doc. 14 at 5-8.) These allegations also suffer from the group pleading deficiency, as discussed above, and should be dismissed.

Officers may be liable under § 1983 for failing to intervene in the violation of constitutional rights. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). To state a claim for failure to intervene based on a theory of bystander liability, a plaintiff must plausibly allege that the officer: "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) [had] a reasonable opportunity to prevent the harm; and (3) [chose] not to act." *Id.* (quotations omitted). Wife has not alleged an underlying constitutional violation that any officer would have had an obligation to

8

prevent, so she also fails to state a failure to intervene claim on this basis.

### 5. *Right to Associate and Right to Travel*

Husband complains that Officers violated his right to "enjoy his family" and his right to travel. (doc. 17 at 4-7.) He does not explain how Officers violated his fundamental right to associate with his family and to marry, however, so this vague and conclusory claim should be dismissed.

As for the right to travel claim, the Supreme Court has repeatedly reaffirmed that the "'constitutional right to travel from one State to another' is firmly embedded in [its] jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (citing *United States v. Guest*, 383 U.S. 745, 757 (1966)). This right is based in the Privileges and Immunities Clause of Article IV of the United States Constitution. *See id.* at 501-02 (citing U.S. CONST. ART. IV, § 2). The Supreme Court has yet to recognize a corresponding right to intrastate travel under the Privileges and Immunities Clause, however. *See Dickerson v. City of Gretna*, No. 05-6667, 2007 WL 1098787, at *2 (E.D. La. Mar. 30, 2007) (citing *Memorial Hosp. v. Maricopa Cnty.*, 415 U.S. 250 (1974)) (additional citations omitted). Husband does not allege any facts showing that Officers impeded his right to interstate travel, so he fails to state a right to travel claim.[6]

### D. City

Plaintiffs claim that City was negligent and "failed to train its police force that did cause the deprivation of the Sovereigns [sic] rights that are guaranteed by the constitution and were [sic] in result to the lack of adequate training causing their employees to violate constitutional rights and

---

[6] Plaintiffs attached a waiver of summons form directed to the Dallas County Clerk of Court and an unspecified district attorney. (doc. 3 at 14.) Any § 1983 claims against those potential defendants are also meritless and should be dismissed. There are no comprehensible allegations against the Dallas County Clerk of Court, and any allegations that a district attorney failed to complete or violated an oath, as explained above, do not state a § 1983 claim. Finally, the allegations that district attorneys conspired with a bailiff to violate Plaintiffs' rights are too conclusory to support relief. *See, e.g.*, *Montgomery*, 759 F.App'x at 314 (citing *Priester*, 354 F.3d at 420).

trespassing." (doc. 14 at 2; doc. 17 at 2.)

Municipalities, including cities, may be held liable under § 1983. *See, e.g., Vess v. City of Dallas*, 608 F.Supp.3d 434, 446 (N.D. Tex. 2022). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. "Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010) (citing *Brown v. Bryan Co.*, 219 F.3d 450, 458 (5th Cir. 2000), *cert. denied*, 131 S. Ct. 66 (2010)). To establish municipal liability based on a failure to train in the Fifth Circuit, the plaintiff must show "'(1) inadequate training procedures; (2) that inadequate training caused the officers to [violate the plaintiff's constitutional rights]; and (3) the deliberate indifference of municipal policymakers." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (alteration in original) (quoting *Pineda*, 291 F.3d at 332); *see World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) ("The failure to train must reflect a 'deliberate' or 'conscious' choice by the municipality." (internal quotations omitted)). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability."

11

*Piotrowski*, 237 F.3d at 579 (citation omitted).

Under Fifth Circuit law, a claim that the failure to train caused a constitutional violation "requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003); *see also Flanagan v. City of Dallas, Tex.*, 48 F.Supp.3d 941, 956 (N.D. Tex. 2014) (quoting *Kitchen v. Dallas Cty.*, 759 F.3d 468, 484 (5th Cir. 2014)) (stating that the most common approach to asserting a failure to train claim is to demonstrate a pattern of similar violations that "were 'fairly similar to what ultimately transpired' when the plaintiff's own constitutional rights were violated"). A pattern of similar prior incidents "requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Fuentes v. Nueces Cty., Tex.*, 689 F.App'x 775, 778 (5th Cir. 2017) (per curiam) (quoting *Peterson*, 588 F.3d at 851 (alteration in original)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *see Peterson*, 588 F.3d at 851.

Here, Plaintiffs' *Monell* claims fail for multiple reasons. First, for there to be a cognizable *Monell* claim, there must be an underlying constitutional violation, and, as explained throughout this recommendation, Plaintiffs have failed to allege one. *See, e.g.*, *Whitley*, 726 F.3d at 648-49 (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010)). Negligence claims are not cognizable under § 1983. *See, e.g.*, *Todd v. Burns*, 95 F.App'x 83 (5th Cir. 2004) (per curiam) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)).

Second, Plaintiffs fail to plausibly allege a City policy that was the moving force of a

12

constitutional violation. They appear to claim that there was a policy to "operate with no Oath." (doc. 17 at 3.) They do not describe this alleged policy in the detail necessary to state a claim, however. *See Spiller*, 130 F.3d at 162 ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.").

Plaintiffs also allege that City failed to train its officers. This allegation is also too conclusory to support a *Monell* claim because they do not allege how City's training was deficient, or even how the training or lack thereof relates to their claims. *See, e.g.*, *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (explaining that for "'liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective'") (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Nor do they allege the requisite pattern of similar violations arising from inadeqaute training.

Plaintiffs fail to state a § 1983 claim against City, and those claims should be dismissed.

## IV. FEDERAL CRIMINAL STATUTES

Plaintiffs seek relief under federal criminal statutes including 18 U.S.C. § 241, 18 U.S.C. § 242, and 18 U.S.C. § 1918. *(See* doc. 14 at 2, 3, 4, 5, 6, 7, 8, 9; doc. 17 at 2, 3, 5, 6, 7.)

Criminal statutes do not convey a private right of action. *See, e.g.*, *Johnson v. Federal Bureau of Investigation*, No. 16-1337, 2016 WL 9776489, at *3 (S.D. Tex. Nov. 17, 2016) (holding no private right of action under 18 U.S.C. § 241) (citation omitted); *Lopez v. Dallas Ministry Ctr.*, No. 3-12-0606-L, 2012 WL 1413526, at *2 (N.D. Tex. Mar. 9, 2012), *rec. accepted* 2012 WL 1423652 (N.D. Tex. Apr. 24, 2012) ("There is no private right of action for criminal conspiracy under 18 U.S.C. § 241, or the deprivation of rights under 18 U.S.C. § 242.") (citation omitted);

13

*Prof'l Air Traffic Controllers Org. (PATCO) v. U.S. Dep't of Transp.*, 529 F.Supp. 614, 616 (D. Minn. 1982) (plaintiff has no standing to enforce criminal penalties under 18 U.S.C. § 1918). Plaintiffs cannot enforce federal criminal statutes in a civil action. *Florance v. Buchmeyer*, 500 F.Supp.2d 618, 626 (N.D. Tex. 2007). Any claim under these federal criminal statutes should be dismissed for failure to state a claim.[7]

## V. UNIVERSAL DECLARATION OF HUMAN RIGHTS

Plaintiffs also seek relief for alleged violations of the Universal Declaration of Human Rights. (*See* doc. 14 at 1, 2, 3, 5, 6, 7, 8; doc. 17 at 1, 2, 6, 7.) However, the Universal Declaration of Human Rights does not confer a private cause of action. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (explaining that the Declaration does not impose any legal obligations or causes of action in the countries that have adopted it). Accordingly, any claims for alleged violations of the Declaration of Human Rights should be dismissed for failure to state a claim.

## VI. STATE LAW CLAIMS

Plaintiffs claim that some or all of the defendants committed a criminal trespass against them or their property under TEX. PENAL CODE § 30.05; that Manager defamed one or both of them by calling the police and/or making a statement to the police about their activities; that Officers and City violated their oaths of office; and that Manager had a "prejudice motive against people of different ethnicity" in violation of the Texas Hate Crimes Act, codified in TEX. CODE CRIM. PROC. ANN. art. 42.014 and TEX. PENAL CODE ANN. § 12.47. (*See* docs. 14 at 3; doc. 17 at 3, 5, 6, 7.)

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that

---

[7] Wife also mentions 25 C.F.R. § 163.29, which allows the United States and Indian tribes to bring actions against individuals for trespass to Indian land. *See Pacino v. Oliver*, No. 18-cv-06786-RS, 2019 WL 13128558, at *3 (N.D. Cal. Aug. 29, 2019). She has not alleged that she is representing an Indian tribe or living on Indian land, so any claim under this regulation should be dismissed.

are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1996). When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. 1367(c)(3).[8] This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte*

---

[8] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it had original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

15

*Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiffs' state law claims because they arise from the same "common nucleus of operative facts" as their federal claims. Requiring Plaintiffs to litigate their claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Further, because the claims lack merit for the reasons discussed below, allowing them to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 11, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendant or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating a case).

The Texas Penal Code does not bestow a private right of action, so any criminal trespass claim based on it should be dismissed. *See, e.g.*, *Kiggundu v. Mortgage Elec. Registration Sys., Inc.*, Civil Action No. 4:11-1068, 2011 WL 2606359, at *6 n.79 (S.D. Tex. June 30, 2011) (dismissing fraud claim brought under Texas Penal Code because the Texas Penal Code does not create a private right of action), *aff'd*, 469 F. App'x 330 (5th Cir. 2012).

As for the defamation claim, the allegations are too conclusory to support relief. To maintain a defamation claim, a plaintiff must plead facts that show the defendant: (1) published a "false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *See In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). A statement

16

is considered defamatory under Texas law "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virture, or reputation." *Parker v. Spotify USA, Inc.*, 569 F.Supp.3d 519, 528 (W.D. Tex. 2021) (citations omitted). For a defamation claim in Texas, "whether the words used 'are reasonably capable of a defamatory meaning'" is the threshold question. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018) (quoting *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)).

Here, Plaintiffs' defamation claim appears to center on the statements that Manager gave to Officers about their conduct. They do not set out the substance of the statements, however, or alleged how they are defamatory. Plaintiffs' defamation claim should be dismissed for failure to state a claim. *See, e.g., Rochefort v. Global Serv.*, EP-20-CV-00298, 2021 WL 3568239, at *3 (W.D. Tex. Mar. 4, 2021) ("Plaintiff's failure to identify the content of the defamatory statements allegedly made by GPS and Asset is fatal. As written, the complaint forces defendants to speculate as to what potentially defamatory statements Plaintiff asserts Asset and GPS made.").

Finally, Plaintiffs seek to recover under the Texas Hate Crimes Act, but this act is codified as a criminal statute and does not provide a private right of action. *See Atkins v. Fort Worth Police Dep't*, Civil Action No. 4:20-cv-00054-P-BP, 2020 WL 5134777, at *6 (N.D. Tex. Aug. 6, 2020) (citing TEX. CODE CRIM. PROC. art. 42.014; TEX. PENAL CODE § 12.47). They also fail to state a claim under the Texas Hate Crimes Act.

### VII. INJUNCTIVE RELIEF

In addition to damages, Plaintiffs seek an order commanding the "decertification of officers" and Manager's "removal from position." (*See* doc. 14 at 8; doc. 17 at 8.)

To obtain injunctive relief, a party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreperable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the non-movant; and (4) that the injunction will not disserve the public interest. *See*, *e.g.*, *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (abrogation on other grounds); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2009); *Topletz v. Skinner*, No. 4:19-CV-820-RWS-KPJ, 2019 WL 6683483, at *2 (E.D. Tex. Dec. 5, 2019).

Injunctive relief is not warranted here because, as explained above, Plaintiffs fail to show a substantial likelihood of success on the merits with respect to any of their claims. *See*, *e.g.*, *United States v. Skinner*, Criminal Action No. 1:02-CR-00093-DCB-JMR-1, 2021 WL 5985149, at *2 (S.D. Miss. Dec. 16, 2021) ("Given that Skinner cannot meet his burden of establishing a substantial likelihood of success on the merits, the Court will refrain from presenting herein a detailed analysis of the remaining three elements of injunctive relief.") (citing *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013)).

## VIII. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint.").

Here, Plaintiffs have responded to detailed questionnaires allowing them to allege their best case. (docs. 14, 17.) Further leave to amend is not warranted.

## IX. RECOMMENDATION

Plaintiffs' claims for monetary damages against the State of Texas should be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction, and their remaining claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915(e)(2)(B).

**SO RECOMMENDED** on this 15th day of March, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                               IRMA CARRILLO RAMIREZ
                                                                               UNITED STATES MAGISTRATE JUDGE